## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Kareem J. Cobbins (M-17359), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 17 C 8401 |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| Cameron Watson, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Kareem Cobbins, a prisoner at the Illinois River Correctional Center, filed this *pro se* 28 U.S.C. § 2254 petition for a writ of habeas corpus challenging his 2010 Cook County conviction for murder. Respondent has filed his answer, to which Petitioner has replied. For the reasons stated herein, the Court denies the § 2254 petition and declines to issue a certificate of appealability.

## BACKGROUND

The background below is from the state appellate court in Petitioner's post-conviction appeal, which well states the facts and history this case. [14-9] (*People v. Cobbins*, 2017 IL App (3d) 140474-U (Ill. App. Ct. 2017)). When addressing a § 2254 petition, federal courts "take the facts from the Illinois Appellate Court's opinions because they are presumptively correct on habeas review." *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1)).

> The evidence at defendant's bench trial established that he killed his wife, Tonya Cobbins, in October 2005. Defendant stabbed her in the chest while she lay sleeping in bed. Defendant's five-year-old son and

the couples' infant child were both in the room at the time. The victim's sister, Yolanda Glover, was in the house as well.

After defendant stabbed his wife in front of his children, he woke Glover. He apologized for what he had done, told her he needed someone to take care of the children, handed her a telephone, and told her to call 911. When police arrived, defendant confessed to killing his wife and told them she was upstairs in their bedroom with a knife in her chest. After confirming these facts, police arrested the defendant.

In a videotaped interview, defendant provided a detailed account of his actions leading up to, during, and immediately after the murder. He told police that a week earlier he confessed to his wife that he had an affair with a woman, Gail Stubbs, earlier in their marriage. Defendant said he and his wife had been arguing about it. He said he woke up that morning, grabbed a knife from the kitchen downstairs, went back into the couple's room, and stabbed his wife repeatedly in the chest.

Later at the jail, defendant told a social worker he killed his wife because someone performed voodoo on him.

The trial court ordered a clinical psychologist, Dr. Randi Zoot, to examine defendant and determine whether he was sane at the time of the offense and whether he was fit for trial. Dr. Zoot found defendant was fit to stand trial. Dr. Zoot's opinion regarding defendant's sanity at the time of the offense, however, was inconclusive. She suspected defendant might suffer from some type of brain dysfunction or pathology and recommended a complete neuropsychological evaluation to help her reach a conclusive opinion.

The trial court ordered a clinical neuropsychologist, Dr. Robert Hanlon, to evaluate defendant. He was asked to assess defendant's then-present mental state, not whether defendant was sane at the time of the offense. In May 2007, Dr. Hanlon reviewed Dr. Zoot's report, court records, police reports, and the results of defendant's positron emission tomography scan. Dr. Hanlon found that defendant suffered from a neuropsychological impairment and a significant functional disability, consistent with the effects of a chronic, untreated seizure disorder. He diagnosed defendant with cognitive, depressive, and seizure disorders. Dr. Zoot submitted a supplemental report in October 2007 after reviewing Dr. Hanlon's findings. Again, her opinion as to defendant's sanity at the time of the offense was inconclusive. Dr. Zoot found that it was unclear whether defendant's neuropsychological impairment had

any impact on his mental state at the time of the offense. Defendant filed Dr. Zoot's psychological evaluation reports with the trial court in May 2006, July 2006, and November 2007, respectively.

In May 2008, the State charged defendant with two counts of first degree murder by way of superseding indictment. 720 ILCS 5/9(a)(1), (a)(2) (West 2004). The State hired a clinical psychologist, Dr. Lisa Sworowski, to evaluate defendant's psychological and neuropsychological state. She issued her report in February 2009, finding that while defendant demonstrated some signs of cognitive impairment and potentially experienced mild psychopathology, his impairments did not substantially diminish his capacity to appreciate the criminality of his conduct at the time of the offense.

Defendant pled not guilty, raising the affirmative defense of insanity, and proceeded to a bench trial. Stubbs testified to having an affair with defendant in 1992. She said she ended the affair, but maintained communication with defendant afterward, last talking to him by telephone two weeks before the murder. Stubbs noticed nothing strange about his behavior at that time. Defendant's mother also testified that she visited the defendant and victim weekly, last seeing them the day before the incident. She said defendant was acting normal at that time; she was unaware of him ever suffering from seizures.

The parties stipulated that Dr. Hanlon would testify consistent with his evaluation of defendant. Dr. Zoot testified to her contacts with defendant and her review of the relevant records, as well as defendant's videotaped interview with police and his jail medical records. Defendant told Dr. Zoot in interviews that nothing unusual happened in the days immediately preceding the murder, but he did vaguely report "not feeling right." Defendant was unable to be more descriptive. He said the murder happened "real quick" and that he was not thinking anything when he did it. Defendant could not offer an explanation for his thoughts or feelings. He said he was unaware of what he was doing while stabbing his wife until he heard his son yell for him.

Dr. Zoot said that in one interview defendant told her his statement about voodoo at the jail was the only possible explanation for the murder. In a follow-up interview, however, defendant said he did not know why he had said that. Dr. Zoot also testified that defendant was aware of the criminality of his actions shortly after the offense when he told Glover to call the police but said this did not speak to his mental state at the time of the offense. Dr. Zoot reiterated that after reviewing

3

Dr. Hanlon's findings, she was still unable to reach a conclusion as to defendant's sanity at the time of the murder.

Sworowski testified that in preparing her report, she interviewed defendant three times. She also performed psychological and neuropsychological testing, and interviewed Glover and defendant's mother. In the collateral interviews, Dr. Sworowski learned there was nothing unusual about defendant's behavior prior to the murder. She said defendant denied ever having neurological symptoms or seizures. Defendant did tell Dr. Sworowski that evil spirits were controlling him when he killed his wife. He would not state definitively whether he believed he was actually the victim of voodoo and denied having any hallucinations at the time of the offense. Dr. Sworowski said that defendant's behavior was not consistent with someone who has delusions stemming from a psychotic disorder. In her professional opinion, such delusions last more than a day and affect multiple aspects of a patient's life. Dr. Sworowski said defendant's ability to provide a detailed account of the murder to police approximately one hour later indicated that he was lucid at the time of the offense.

Dr. Sworowski said defendant displayed no psychotic behavior and reported no psychotic symptoms around the time of the murder. She disagreed with Dr. Hanlon's diagnosis that defendant had cognitive, depressive, and seizure disorders. Dr. Sworowski opined that his deficits and symptoms were insufficient to substantially diminish his capacity to appreciate the criminality of his conduct at the time of the offense.

The trial court found defendant guilty of both counts of first degree murder. The trial court further found that defendant did not prove by clear and convincing evidence that he did not appreciate the criminality of his conduct while murdering the victim. Defendant filed a motion for a new trial, arguing the evidence at trial established that he was insane at the time of the offense. The trial court denied defendant's motion and sentenced him to 40 years' imprisonment. Defendant filed a motion to reconsider sentence, which the trial court also denied.

[14-9] at 2–6 (*Cobbins*, 2017 IL App (3d) 140474-U, ¶¶ 5–16).

## Direct Appeal

On direct appeal, Petitioner argued that: (1) the trial court's finding that he was sane at the time of stabbing was contrary to the manifest weight of the evidence;

4

and (2) his sentence was excessive. [14-1] at 9–11. He claimed the trial court erred by accepting Dr. Sworowski's testimony that Petitioner understood the criminality of his conduct at the time of the offense, given Dr. Zoot's concerns about Petitioner's mental health and Dr. Hanlon's belief that Petitioner suffered neuropsychological impairments consistent with an untreated seizure disorder. *Id.*; *see also* [14-2] at 15–9, 22–30. Petitioner further argued that the nature of the offense and his behavior immediately following it proved that he was insane at the time of the stabbing.[1] [14-2] at 19–22.

The state appellate court disagreed, holding that the trial court's finding that defendant was sane at the time of the offense did not go against the manifest weight of the evidence. [14-1] at 11; *see also People v. Frank-McCarron*, 934 N.E.2d 76, 88 (Ill. App. Ct. 2010) (whether a defendant was insane at the time of an offense is a finding of fact which will not be overturned unless it is contrary to the manifest weight of the evidence). In particular, the state appellate court emphasized that: Dr. Sworowski testified that "defendant was sane" when he stabbed his wife; the court-appointed experts, Dr. Zoot and Dr. Hanlon, could not "reach a conclusion as to whether defendant was insane at the time of the killing"; defendant's actions and statements immediately after the stabbing suggested he was lucid; and lay witness

---

[1] Under Illinois law, "[a] person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity to appreciate the criminality of his conduct." 720 ILCS 5/6-2(a). "[T]he burden of proof is on the defendant to prove by clear and convincing evidence that the defendant is not guilty by reason of insanity. However, the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of each of the offenses charged." § 5/6-2(e).

testimony also indicated Defendant was sane "near the time of the offense." [14-1] at 9–11.

The appellate court further observed that: even if Petitioner was mentally ill at the time of the stabbing, "the trial court was not required to find that [he] was legally insane"; his "delusional statements regarding evil spirits also did not require a finding of insanity, especially where defendant did not commit to this belief when questioned regarding it"; and a "conclusion that insanity merely cannot be ruled out is not compelling evidence that the trial court's finding was against the manifest weight of the evidence." *Id.* at 10.

Petitioner filed a petition for leave to appeal (PLA) with the Illinois Supreme Court, again arguing that the trial court's finding that he was not insane at the time of the offense was against the manifest weight of the evidence and that his sentence was excessive. [14-8]. The Illinois Supreme Court denied the PLA. [14-7]. Petitioner petitioned the United States Supreme Court for a writ of certiorari, which was denied. *Cobbins v. Illinois*, 571 U.S. 872 (2013).

**State post-conviction proceedings**

Petitioner, proceeding *pro se*, then filed a post-conviction petition in the state trial court, challenging the conviction and sentence on various grounds. [14-15] at 231–307. The state trial court summarily dismissed the petition as frivolous and patently without merit at the first stage of post-conviction review. [14-15] at 313–16.

Petitioner, with counsel, appealed, arguing: (1) trial counsel was ineffective for failing to obtain a definite expert opinion on Petitioner's sanity at the time of the

6

offense; and (2) appellate counsel was ineffective for not raising trial counsel's ineffectiveness on direct appeal. [14-10]. According to Petitioner, a conclusive opinion on his sanity at the time of the offense would have enabled him to choose whether to plead guilty or proceed to trial. *Id.*

The state appellate court, over a dissent, affirmed. [14-9]. The court first determined that Petitioner presented no evidence with his petition indicating that any expert could have provided a conclusive opinion on his sanity at the time of the offense. *Id.* at 7–8 (citing 725 ILCS 5/122-2, which requires that a post-conviction petition include "affidavits, records, or other evidence supporting its allegations or . . . state why the same are not attached"). The state appellate court further determined that, even if such evidence existed, trial counsel's decision not to seek another expert opinion was presumptively a strategic choice, and Petitioner's contention that the result of his criminal case would have been different was "unsubstantiated speculation." [14-9] at 8–9.[2]

Petitioner filed a PLA in the state supreme court. [14-14]. He argued that his post-conviction petition stated the gist of a constitutional claim of ineffective assistance of counsel with respect to trial counsel's failure to obtain a definite opinion on Petitioner's sanity at the time of the offense. *Id.* The Illinois Supreme Court denied the PLA. [14-13].

---

[2] One member of the panel, Justice Mary McDade, dissented and concluded that attachments to Petitioner's post-conviction petition—his own affidavit and his letters to Dr. Hanlon requesting an affidavit—sufficed to explain the unavailability of evidence. [14-9] at 12–13. Justice McDade further concluded that the post-conviction petition sufficiently asserted the gist of a valid constitutional claim of ineffective assistance of both trial and appellate counsel and thus it should have proceeded to the second stage of post-conviction review. *Id.* at 12–16.

**Petitioner's § 2254 petition**

Following the conclusion of his state post-conviction proceedings, Petitioner filed the present 28 U.S.C. § 2254 petition in this Court. He lists four grounds for relief. Grounds Three and Four, however, are duplicative and make the same argument—that Petitioner's state post-conviction petition satisfied Illinois' affidavit requirement and stated the gist of constitutional claims under 725 ILCS 5/122-2. Ground Three restates verbatim Justice McDade's dissenting opinion in the post-conviction appeal and Ground Four makes the same argument in Petitioner's own words. Thus, as a practical matter, Petitioner asserts three claims:

(1) trial counsel was ineffective: (a) for stipulating to the introduction of Dr. Hanlon's report and not calling him to testify at trial, [1-1] at 9; and (b) or failing to seek another expert opinion with a conclusive finding on Petitioner's sanity at the time of the offense, *id.* at 11–14;

(2) appellate counsel was ineffective on direct appeal for not asserting ineffective assistance of trial counsel: (a) with respect to Dr. Hanlon not testifying at trial, and (b) for not obtaining a conclusive expert opinion, *id.* at 16–20; and

(3) Petitioner's state post-conviction petition satisfied 725 ILCS 5/122-2's affidavit requirement and stated the gist of constitutional claims, and the state

appellate court applied an incorrect standard when affirming the trial court's first-stage dismissal of the petition, *id.* at 21-25; [1-2] at 1–9.

## DISCUSSION

For the reasons explained below, the Court finds that Petitioner's claims warrant no § 2254 relief. Claims One and Two are both procedurally defaulted and without merit. Claim Three involves an issue of state law only and does not present a constitutional ground cognizable for federal habeas corpus review.

### A.    Claims One and Two are Procedurally Defaulted

Procedural default occurs when, as here, a prisoner fails to fully exhaust state court remedies for his federal claim and he no longer has the ability to exhaust under the state's procedural laws. *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016) (prior to seeking federal habeas relief, state prisoners must "exhaust[ ] the remedies available in the courts of the State") (citing 28 U.S.C. § 2254(b)(1)(A)). In short, a petitioner must "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," which is accomplished "by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A second type of procedural default springs from "the independent and adequate state ground doctrine." *Thomas*, 822 F.3d at 384 (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)). Federal habeas review is precluded "where the state courts declined to address a petitioner's federal claims because [he] did not meet state procedural requirements." *Id.* at 384. A state law ground is "independent

9

when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012). A state law ground is "adequate when it is a firmly established and regularly followed state practice at the time it is applied." *Id.*

Principles of "comity, finality, and federalism" give rise to both types of procedural default. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *Thomas*, 822 F.3d at 384. State courts, like federal courts, are "obliged to enforce federal law," and when a petitioner alleges his state conviction violates the Constitution, "state courts should have the first opportunity to review this claim and provide any necessary relief." *Boerckel*, 526 U.S. at 844. Failing to present constitutional challenges to a state conviction to the state courts, or presenting them in a manner that does not comply with state law, deprives the state courts of an "opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.

Petitioner's claims fail under both types of procedural default.

### 1. Petitioner failed to present Claims 1(a) and 2 in a complete round of state court review

Petitioner presented Claim 1(a)—that trial counsel was ineffective for stipulating to the introduction of Dr. Hanlon's report and not requiring his presence at trial—to the state trial court in his post-conviction petition, but he did not argue this claim before the state appellate or supreme court in Petitioner's post-conviction appeal or PLA. *See* [14-15] at 236–37; [14-10]; [14-14]. The same is true for Claim 2(a) (the claim that appellate counsel failed to present the ineffective assistance of trial counsel claim on direct appeal). *See id.* With respect to Claim 2(b)—the claim

that his appellate attorney rendered ineffective assistance on direct appeal for not arguing trial attorney's ineffectiveness for not seeking another expert opinion with a conclusive finding on his sanity at the time of the offense—Petitioner presented this claim to the state trial and appellate courts in post-conviction proceedings, but he failed to include this claim in his PLA to the Illinois Supreme Court. [14-14].

Quite simply, Petitioner failed to present Claims 1(a) and 2 in "one complete round" of state court review. *Boerckel*, 526 U.S. at 845. At this point, Petitioner would also be procedurally barred if he attempted to present these unexhausted claims in another state post-conviction petition, appeal, or PLA. *See* 725 ILCS 5/122-1(f); *People v. Ortiz*, 919 N.E.2d 941, 947 (Ill. 2009) (explaining Illinois' bar to successive post-conviction proceedings). Claims 1(a) and 2 are thus procedurally defaulted.

### 2. The state appellate court denied Claims 1(b) and 2(b) on an independent and adequate state law ground

The state appellate court dismissed Claim 1(b) (Petitioner's claim that his trial attorney failed to obtain another expert opinion with a conclusive finding on Petitioner's sanity at the time of the murder) and Claim 2(b) (his claim that counsel on direct appeal failed to assert the claim), because his post-conviction petition included no affidavits or other evidence supporting the claims. [14-9] at 7–8 (citing 725 ILCS 5/122-2). As such, the state appellate court denied Claim 1(b) and Claim 2(b) (in addition to being unexhausted) based upon an independent and adequate state law ground.

Illinois law requires that a post-conviction petition "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached."  725 ILCS 5/122-2.  As explained by the state appellate court, ""the affidavits and exhibits which accompany a petition must identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting the petition's allegations."  [14-9] at 7 (quoting *People v. Delton*, 882 N.E.2d 516, 520 (Ill. 2008)).  Failing to attach affidavits or other evidence or to explain their absence, according to the state court in Petitioner's post-conviction appeal, "is 'fatal' to a post-conviction petition and by itself justifies the petition's summary dismissal." [14-9] at 7.

According to the state appellate court, "[i]t is easy for a defendant to claim that discovery of certain evidence would have changed the outcome of his trial.  However, to survive summary dismissal, a defendant is required to, at the very least, show that such evidence exists." [14-9] at 7–8.  The court concluded that, without such evidence, Petitioner's claims amounted to "nothing more than a 'broad conclusory allegation of ineffective assistance of counsel,' which is insufficient to withstand scrutiny under the Postconviction Hearing Act" and survive a first-stage dismissal.[3]  *Id.* at 7–8 (quoting *Delton*, 882 N.E.2d at 522, holding that the court properly dismissed at the first stage of post-conviction review a claim that trial counsel failed to investigate

---

[3] Illinois' Post-Conviction Hearing Act provides for three stages of review in the state trial court. *See* 725 ILCS 5/122-1, *et seq*. At the first stage, the trial court may dismiss the petition if it is frivolous or patently without merit. § 5/122-2.1. If the petition survives this stage, it moves into the second stage, where the State is required to answer the petition and where counsel is often appointed for the petitioner. If not dismissed at the second stage, the petition advances to the third stage where the trial court conducts an evidentiary hearing. *See* § 5/122-5 and § 122-6; *People v. Hodges*, 912 N.E.2d 1204, 1208 (Ill. 2009).

potential witnesses but attached no affidavits or other evidence indicating the existence of any witnesses).

The state appellate court clearly relied upon Illinois' affidavit rule when denying Petitioner's ineffective-assistance claims. [14-9] at 7-8; *see also Thompkins*, 698 F.3d at 986 ("A state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case."). Furthermore, federal and Illinois courts regularly follow Illinois' affidavit rule under 5/122-2 and consider it to be a procedurally adequate ground for a claim's dismissal. *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) ("Illinois courts regularly enforce the affidavit rule."); *Thompkins*, 698 F.3d at 986–87. Based upon the record, the state appellate court clearly dismissed Petitioner's ineffective assistance claims on independent and adequate state law grounds.

Justice McDade's dissent does not change this outcome. Justice McDade noted in her dissenting opinion that Petitioner's post-conviction petition included his own affidavit explaining his efforts to obtain: (1) an affidavit from Dr. Hanlon about whether he would have testified in court, and (2) a report from Dr. Zoot with Petitioner's description of the dream he had just before stabbing his wife. *See* [14-15] at 278–82. Justice McDade believed the petition contained "an explanation for the absence of evidence sufficient to meet the requirements of section 122–2." [14-9] at 13. But whether the state appellate court correctly applied Illinois' affidavit requirement under 725 ILCS 5/122-2 is not an issue before this Court. In assessing the adequacy of a state procedural ruling, federal courts cannot review *de novo* the

"merits of the state court's application of its own procedural rules." *Crockett v. Butler*, 807 F.3d 160, 167 (7th Cir. 2015) (citing *Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014)). Instead, we ask "whether the rule invoked was 'firmly established and regularly followed.'" *Crockett*, 807 F.3d at 167 (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009); *see also Jones v. Butler*, 778 F.3d 575, 586 (7th Cir. 2015) ("we are disinclined to substitute our judgment for that of the Illinois courts" with respect to the application of Illinois' post-conviction laws).

So long as a procedural rule is not applied in a "manner that 'impose[s] novel and unforeseeable requirements without fair or substantial support in prior state law' or 'discriminate[s] against claims of federal rights,'" the rule remains adequate. *Clemons v. Pfister*, 845 F.3d 816, 819–20 (7th Cir. 2017) (quoting *Walker v. Martin*, 562 U.S. 307, 320 (2011)). Here, the record contains no indication that the state appellate court in Petitioner's post-conviction appeal applied the affidavit rule in some "freakish," unforeseeable way. *Clemons*, 845 F.3d at 820 (quoting *Walker*, 562 U.S. at 320). Rather, as noted above, the Illinois appellate court explained the purpose of the state's affidavit rule and the court's application of it: "It is easy for a defendant to claim that discovery of certain evidence would have changed the outcome of his trial. However, to survive summary dismissal, a defendant is required to, at the very least, show that such evidence exists." [14-9] at 7–8 (citing *Delton*, 882 N.E.2d at 522).

Nor does it appear that the court applied the affidavit rule, which is codified in 725 ILCS 5/122-2 and regularly followed by Illinois courts, *Delton*, 882 N.E.2d at 522,

in a manner to discriminate against Petitioner's constitutional rights. "[A] state procedural rule discriminates against federal rights—and is thus 'inadequate'—only if the prisoner can show a 'purpose or pattern to evade constitutional guarantees.'" *Clemons*, 845 F.3d at 820 (quoting *Beard v. Kindler*, 558 U.S. 53, 65 (2009) (Kennedy, J., concurring)). Petitioner makes no showing in this regard.

Accordingly, the state appellate court's denial of Petitioner's ineffective assistance of counsel claims for failure to provide an affidavit (or other evidence in support) constituted an independent and adequate ground. These claims, like his claim that trial counsel did not call Dr. Hanlon to testify, are procedurally defaulted.

### 3. Exceptions to procedural default

Procedural default may be excused "where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice,'" i.e., new, reliable evidence exists such that no reasonable trier of fact would have found him guilty had such evidence been presented. *Thomas*, 822 F.3d at 386 (quoting *Coleman*, 501 U.S. at 750). Neither exception applies here.

To demonstrate cause, the prisoner must "show that some objective factor external to the defense" impeded his efforts to "comply with the State's procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017). Petitioner's only argument is that the state appellate court erred in its application of Illinois law, 725 ILCS 5/122-2, because his own affidavit explained the absence of evidence and his post-conviction petition stated the gist of ineffective assistance claims. *See* [17], [18]. But as

15

previously noted, the misapplication of state law does not constitute cause for the procedural default. *See Oaks v. Pfister*, 863 F.3d 723, 727 (7th Cir. 2017) ("arguments about the state courts' applications of state procedural rules do not avoid the procedural default. We are not the Illinois Supreme Court and do 'not have license to question . . . whether the state court properly applied its own law'") (citations omitted). Petitioner has not demonstrated cause and prejudice to excuse the procedural default.

Nor has he demonstrated that a fundamental miscarriage of justice will occur if this Court does not review his claims on the merits. The "fundamental miscarriage of justice standard erects an extremely high bar for the habeas petitioner to clear. It applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013) (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). To pass through the "actual-innocence gateway to a merits review . . ., [a] petitioner must have 'new reliable evidence . . . that was not presented at trial . . . and must persuade the district court that it is 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (quoting *Schlup*, 513 U.S. at 324, 327). Petitioner points to no new evidence establishing his actual innocence. To the contrary, the record confirms his guilt with overwhelming evidence.

For the reasons stated above, Claims One and Two are procedurally defaulted and Petitioner has not shown that either exception applies to excuse the default.

### B.  Claims One and Two Lack Merit

Even if this Court could reach the merits of Petitioner's ineffective assistance of counsel claims, the claims warrant no § 2254 relief.  With respect to Claim 1(a)—that trial counsel was ineffective for stipulating to the introduction of Dr. Hanlon's report in lieu of him testifying at trial—the state trial court on post-conviction review (the last state court to address this claim) determined "that the decision to stipulate to a witness' testimony by way of a written report is a matter of trial strategy." [14-15] at 314.  As to Petitioner's claim that trial counsel was ineffective for failing to seek another expert opinion conclusively finding whether Petitioner was sane or insane at the time of the offense (Claim 1(b)), the state appellate court (which issued the last reasoned state court decision on this claim) determined that trial counsel's decision was a strategic choice and that Petitioner made no showing that such a choice was objectively unreasonable or prejudicial.  [14-9] at 8–9.

Federal habeas relief for these claims is available only if Petitioner can show that the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state-court decision is contrary to clearly established federal law "if it applies a rule that contradicts the governing law set forth" in Supreme Court decisions or "confronts a set of facts that is materially indistinguishable from" a Supreme Court

decision yet comes out differently. *Brown v. Payton*, 544 U.S. 133, 141 (2005)). For a state court's application of federal law to be unreasonable, it must be "more than incorrect; it must have been objectively unreasonable." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (citing *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). "'Unreasonable' in [this] context . . . means something . . . lying well outside the boundaries of permissible differences of opinion." *McGhee v. Dittmann*, 794 F.3d 761, 769 (7th Cir. 2015). If this Court finds that the state appellate court "took the constitutional standard seriously and produce[d] an answer within the range of defensible positions," Petitioner is not entitled to relief. *Felton*, 926 F.3d at 464. The petitioner bears the burden of showing that the state court's decision was unreasonable. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011)).

To establish a Sixth Amendment violation of ineffective assistance, Petitioner must demonstrate that: (1) "counsel's performance was deficient," i.e., he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense," i.e., "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

As noted above, Petitioner's ineffective assistance of counsel claims—that trial counsel stipulated to Dr. Hanlon's report as opposed to having him testify; that trial counsel did not seek another expert opinion conclusively opining on Petitioner's mental state at the time of the murder; and that appellate counsel raised neither of these claims on direct appeal—all involved strategic choices. Such strategic choices made after "thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91; *see also Hinton v. Alabama*, 571 U.S. 263, 274 (2014).

With respect to Petitioner's contention that his trial attorney was ineffective for stipulating to the introduction of Dr. Hanlon's report and not having him testify at trial (Claim 1(a)), Petitioner does not say what Dr. Hanlon would have said at trial or whether or how Dr. Hanlon's testimony would have differed from his report. *See* [1-1] at 9. Petitioner alleges that Dr. Hanlon could have explained his conclusions better and "rebut[ted] some of the state's doctor's conflicting statements," *id.*, but he offers nothing to support this allegation. Petitioner wrote to Dr. Hanlon, asking if he would sign an affidavit that he would have testified at trial, [14-15] at 281, but the record contains no response from Dr. Hanlon. A defendant cannot "simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).

As to Petitioner's claim that trial counsel was ineffective for failing to seek another expert opinion (Claim 1(b)), the state appellate court determined that the claim lacked merit. In addition to noting that Petitioner presented no evidence that such an expert existed, the state appellate court held that counsel presumably did not seek another opinion as a matter of trial strategy and that such a strategy was reasonable in light of the evidence. The state appellate court found that, "aside from killing his wife, defendant showed no signs of mental instability. After stabbing his wife in the chest, defendant immediately told his sister-in-law to call the police. This indicates defendant firmly appreciated the criminality of his conduct moments after the offense." [14-9] at 8. The state appellate court concluded that given the "strength of the State's case, trial counsel's decision not to obtain another expert—one who may very well have determined defendant was sane at the time of the offense—was an objectively reasonable trial strategy, not deficient performance." *Id.*

The appellate court determined that an abundance of evidence demonstrated Petitioner's sanity, and this determination finds ample support in the record. Yolanda Glover, the victim's sister, stated that she was living with Petitioner and his family at the time of the murder and that Petitioner awakened her right after the stabbing. [14-16] at 252. She stated that Petitioner "came in to my room and said 'you know I love you guys but I need someone to take care of the kids.' He then handed me the phone that he had in his hands and told me to call the police and he told me to tell them to come and get him." *Id.* at 252–53. "I asked him why the police would need to come and get him, and before he could respond, Kareem Jr. came into the

20

room and said daddy went downstairs and got a knife and came upstairs and killed mommy." *Id.* at 253. She stated that Petitioner then called 911 and handed her the phone, and she spoke to the 911 operator. *Id.*

In other words, the Petitioner's behavior immediately after the murder confirmed that he appreciated the criminality of his actions. Such evidence supports the state appellate court's conclusion that "seeking another expert opinion ran the risk of tipping the balance on the issue of defendant's sanity further in the State's favor," and that trial counsel reasonably chose not to seek another opinion. [14-9] at 8. Given the record, this Court cannot conclude that the state court's conclusion constituted an unreasonable application of Supreme Court law or an unreasonable determination of facts. *See* § 2254(d). To the contrary, the state courts got it right.

Since Petitioner's ineffective assistance of trial counsel claims lacked merit, his claims that appellate counsel was ineffective for failing to raise the same claims also lack merit. *See Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015) (an appellate attorney is not ineffective for failing to argue weak issues); *see also Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims."). Claims One and Two lack merit in addition to being procedurally defaulted.

## C.    Claim Three is Non-Cognizable

Petitioner's third claim (Grounds Three and Four in his § 2254 petition) argues that his state post-conviction petition stated the gist of claims of ineffective assistance of counsel and thus was wrongly dismissed under state law. According to Petitioner,

"these are very low standards," and his post-conviction assertions about his attorney not obtaining another expert opinion about Petitioner's sanity at the time of the offense were "not completely contradicted by the record"; he argues that they, therefore, should have survived the first stage of post-conviction review. [1-2] at 6; *see also People v. Hodges*, 912 N.E.2d 1204, 1212 (Ill. 2009) (explaining that a post-conviction petition should not be dismissed at the first stage of review, unless it presents an indisputably meritless legal theory, i.e., "one which is completely contradicted by the record").

As explained above, federal habeas review addresses violations of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). It is not the "province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Brewer v. Aiken*, 935 F.2d 850, 855 (7th Cir. 1991) ("We do not sit as a super state supreme court to review error under state law"). Whether the state post-conviction courts "misapplied state law in determining if [petitioner had stated the gist of a constitutional claim] is plainly a question of state law." *United States ex rel. Scott v. Atchison*, No. 11 C 3442, 2012 WL 3234297, at *4 (N.D. Ill. Aug. 2, 2012) (quoting *Anderson v. Hardy*, 779 F. Supp. 2d 816, 825 (N.D. Ill. 2011)); *see also Bajdo v. Butler*, No. 11 C 1091, 2015 WL 1427786, at *7 (N.D. Ill. Mar. 24, 2015) (a claim "challenging the application of the Post–Conviction Hearing Act to his post-conviction petition . . . is not cognizable on federal habeas review"). Claim Three does not present a cognizable § 2254 claim and is denied.

**D.     Certificate of Appealability and Notice of Appeal Rights**

The denial of Petitioner's petition is a final decision ending this case. If he seeks to appeal, he must file a notice of appeal in this Court within 30 days from when judgment is entered. Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this decision to preserve his appellate right, but if he wishes the Court to reconsider its judgment, he may file a motion under Fed. R. Civ. P. 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of entry of judgment and suspends the deadline for filing an appeal until this Court rules on the motion. *See* Fed. R. Civ. P. 59(e) and Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until this Court rules on the motion but only if the motion is filed within 28 days of the judgment. Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

The Court declines to issue a certificate of appealability. *See* Rule 11 of the Rules Governing § 2254 Cases. Petitioner cannot make a substantial showing of the denial of a constitutional right, and cannot show that reasonable jurists would debate, much less disagree, with this Court's resolution of Petitioner's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

## CONCLUSION

For the reasons explained above, this Court finds that Petitioner's claims do not warrant § 2254 relief. Accordingly, this Court denies Petitioner's habeas corpus petition [1] and [8] and denies as moot all pending motions. The Court declines to issue a certificate of appealability. The Clerk is directed to: (1) update the docket to show that Petitioner is now at Illinois River Correctional Center; (2) terminate Cameron Watson as Respondent; (3) add Cherryle Hinthorne, Warden of Illinois River Correctional Center, as Respondent; (4) change the case caption to *Cobbins v. Hinthorne*; and (5) enter judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

Dated: June 25, 2020                              Entered:

                                                  John Robert Blakey
                                                  United States District Judge